# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| _____ : | |
| PEROXYCHEM LLC, : | **Civil Action No. 14-6446** |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | Jury Trial Demanded |
| : | |
| INNOVATIVE ENVIRONMENTAL : | |
| TECHNOLOGIES, INC., : | |
| : | |
| Defendant. : | |
| _____ : | |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT INNOVATIVE EVIRONMENTAL TECHNOLOGIES, INC.

Defendant Innovative Environmental Technologies, Inc. ("IET"), by and through its counsel, IP Works, PLLC, hereby files this Answer, Affirmative Defenses, and Counterclaims.

## JURISDICTION AND VENUE

1.      Defendant admits that this action purports to arise under the patent laws of the United States, Title 35 United States Code. Defendant denies any remaining allegations of paragraph 1.

2.      Defendant admits that 28 U.S.C. §1331 confers subject matter jurisdiction over actions arising under the laws of the United States and §1338(a) confers subject matter jurisdiction over actions arising under the patent law. Defendant denies any remaining allegations of paragraph 2.

3.      Defendant admits that venue is proper in the Eastern District of Pennsylvania. Defendant denies any remaining allegations of paragraph 3.

4.      Defendant admits that this Court has personal jurisdiction over IET because IET is

incorporated in and has its principal place of business in Pipersville, Pennsylvania and has substantial contacts with Pennsylvania. Defendant denies any remaining allegations of paragraph 4.

## PARTIES

5.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5, and therefore denies them.

6.      Admitted.


## THE PATENT-IN-SUIT

7.      Defendant admits that US Patent No 7,785,038 (the '038 Patent) was issued, but denies that it was duly and legally issued. Defendant denies any remaining allegations of paragraph 7.

8.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, and therefore denies them.


## COUNT I – INFRINGEMENT OF THE '038 PATENT

9.      Defendant incorporates by reference its responses to paragraphs 1-8 above as its response to paragraph 9.

10.     Defendant denies the allegations of paragraph 10, and specifically denies that it has infringed or is liable for infringement of any valid or enforceable claim of the '038 Patent, if any.

11.     Defendant denies the allegations of paragraph 11, and specifically denies that it has committed infringing activities.

12.     Defendant admits PeroxyChem communicated with IET with regard to the Hexcel site and demanded that IET obtain a license, and Defendant admits that IET refused to obtain a license. Defendant denies the remaining allegations of paragraph 12.

13.     Defendant denies the allegations of paragraph 13, and specifically denies that it has committed infringing activities.


## PRAYER FOR RELIEF

These paragraphs set forth the statement of relief requested by Plaintiff to which no response is required. Defendant denies that Plaintiff is entitled to any of the requested relief and denies any allegations contained in the Prayer For Relief to which a response is required.

Plaintiff's demand that all issues be determined by a jury trial does not state any allegation, and IET is not required to respond. To the extent that any allegations are included in the demand, IET denies these allegations.

IET denies each and every allegation of Plaintiff's Complaint not specifically admitted or otherwise responded to above. IET specifically denies it has infringed or is liable for infringement of any valid and enforceable patents of Plaintiff, if any. IET further specifically denies that Plaintiff is entitled to any relief whatsoever of any kind against IET as a result of any act of IET, or any person or entity acting on their behalf.

WHEREFORE, Defendant IET respectfully requests this Court enter judgment in its favor and against Plaintiff as to the demands made in Count I of the Complaint. IET also requests the award of costs, attorney's fees, and such other and further relief as this Court shall deem just and proper.

## **AFFIRMATIVE DEFENSE I**

### **(Failure to Join Necessary and/or Indispensable Parties)**

1.      PeroxyChem's claims are barred because it has failed to join necessary and/or indispensable parties.

## **AFFIRMATIVE DEFENSE II**

### **(Non-infringement of the '038 Patent)**

2.      IET does not infringe, has not infringed (directly, contributorily, or by inducement) and is not liable for infringement of any valid and enforceable claim of U.S. Patent 7, 785,038 (the "038 Patent")

3.      No claim of the '038 Patent can be properly construed to cover any of IET's methods.

## **AFFIRMATIVE DEFENSE III**

### **(Invalidity of the '038 Patent)**

4.      The '038 Patent is invalid for failure to satisfy the conditions of patentability under the patent laws of the United States, including 35 U.S.C. §§ 101, 102, 103, and 112, and/or because the alleged invention thereof lacks utility; is taught by, suggested by, and/or, obvious in view of, the prior art; and/or is not adequately supported by the written description of the patented invention.

## **AFFIRMATIVE DEFENSE IV**

### **(Prosecution History Estoppel)**

5.      PeroxyChem is estopped from construing or interpreting the claims of the '038 Patent to cover any IET method due to the admissions and representation made to the United

States Patent and Trademark Office ("PTO") by or on behalf of the applicants during prosecution of the '038 Patent.

## AFFIRMATIVE DEFENSE V

### (Laches, Waiver, Estoppel and Acquiescence)

6.      PeroxyChem's claims for relief are barred in whole or in part by laches, waiver, estoppel, and/or acquiescence due to its inaction to timely assert the patents.

7.      The '038 Patent is unenforceable because PeroxyChem and/or its predecessors in interest have acquiesced in IET's use of its methods, including the IET Method allegedly covered by the '038 Patent, by failing to assert its patent rights against IET for nearly ten (10) years.

8.      The '038 Patent is unenforceable because the delay in bringing suit by PeroxyChem and/or PeroxyChem's predecessors in interest was unreasonable and inexcusable, and IET has suffered material prejudice due to the delay.

9.      The '038 Patent is unenforceable because the statements and actions of PeroxyChem and/or its predecessors in interest were such that it was reasonable to infer that PeroxyChem and/or its predecessors in interest did not intend to enforce its patents, IET relied on the misleading conduct, and IET will be materially prejudiced if PeroxyChem is allowed to proceed with its claim.

10.     The '038 Patent is unenforceable because, upon information and belief, PeroxyChem and/or its predecessors in interest knowingly waived any right it may have to enforce the '038 Patent.

## AFFIRMATIVE DEFENSE VI

### (Unclean Hands)

11.     PeroxyChem is barred from any recovery under the doctrine of unclean hands.

12.     PeroxyChem's claims against IET are barred because, upon information and belief, PeroxyChem has come to the Court with unclean hands due to its attempt to force IET to pay for a license for methods not covered by PeroxyChem's alleged intellectual property in order to harm IET and its principal.

## AFFIRMATIVE DEFENSE VII

### (Limitation on Damages)

13.     PeroxyChem is barred from recovering any damages for events occurring more than 6 years prior to the date of filing the Complaint under 35 U.S.C. § 286.

## AFFIRMATIVE DEFENSE VIII

### (Inequitable Conduct)

14.     The '038 Patent is unenforceable because it is tainted by inequitable conduct committed during its prosecution before the PTO.  More specifically:

(a)     Title 37 of the Code of Federal Regulations ("C.F.R.") § 1.56 and the Manual for Patent Examination and Procedure ("M.P.E.P.") § 2000.01 *et seq.* impose a duty of candor and good faith on each individual associated with the filing and prosecution of a patent application before the PTO.  This duty requires applicants and their prosecuting agents and attorneys (those involved in obtaining the '038 Patent at issue in this case are referred to herein as "Applicants") to disclose to the PTO all information that is material to the patentability of the application being examined.  Failing to disclose material information, or making materially false misrepresentations, with deceptive intent to the PTO, constitutes inequitable conduct and renders

the affected patents unenforceable.

(b)     On information and belief, Applicants with intent to deceive, failed to disclose to the PTO the true inventors, and all of them.

(c)     On information and belief, Applicants obtained the '038 Patent by misleading the Examiner as to, among other things: the impractibility, impossibility, ineffectiveness and/or lack of utility of the invention as claimed and described, in that the chemistry as claimed and described would not and does not function as described by Applicants; the terms "dipersulfate", "dipersulfates", "sodium dipersulfate", "potassium dipersulfate" and "ammonium dipersulfate" which are not generally accepted terms in the industry and at best are slang terms lacking a precise definition and which do not adequately inform one of ordinary skill in the art the nature and extent of the patented technology; Applicants' claim of priority to the invention as described by the patent claims as allowed; the fact that the invention was disclosed more than one year before its earliest priority date; and the state of the prior art on the earliest priority date of the '038 Patent.

## AFFIRMATIVE DEFENSE IX

### (Misuse)

15.     PeroxyChem's claims against IET for alleged infringement of the '038 Patent is barred by the doctrine of misuse because, upon information and belief, PeroxyChem has attempted to impermissibly expand the scope of the '038 Patent by requiring IET (and on information and belief others in the remediation industry) to purchase a license for methods not covered by PeroxyChem's alleged intellectual property.

## AFFIRMATIVE DEFENSE X

### (Exceptional Case)

16.     This is an exceptional case under 35 U.S.C. § 285, and accordingly, IET is entitled to its attorneys' fees incurred in defending against PeroxyChem's Complaint.

## AFFIRMATIVE DEFENSE XI

### (License / Implied License)

17.     Upon information and belief, lawful purchasers of PeroxyChem's Klozur® sodium persulfate product, including companies engaged in business of in situ remediation such as IET, are licensed to use any alleged intellectual property of PeroxyChem embodied in the Klozur® product and the methods of use for which it is sold.

18.     Upon information and belief, PeroxyChem's statements and actions were such that it was reasonable to infer that lawful users of PeroxyChem's products, including, without limitation, purchasers and their beneficiaries, had permission to use the '038 Patent.

## AFFIRMATIVE DEFENSE XII

### (No Injunctive Relief)

19.     PeroxyChem has not suffered any irreparable injury, PeroxyChem has an adequate remedy at law, injunctive relief would be contrary to the public interest, and PeroxyChem is not entitled to injunctive relief.

## COUNTERCLAIMS

As and for its counterclaims against Plaintiff and Counterdefendant PEROXYCHEM LLC ("PeroxyChem"), Defendant and Counterclaimant INNOVATIVE ENVIRONMENTAL TECHNOLOGIES INCORPORATED ("IET") alleges as follows:

## THE PARTIES

20.     IET is a corporation organized under the laws of Pennsylvania with a principal place of business in Pipersville, Pennsylvania.

21.     Upon information and belief, PeroxyChem is a Limited Liability Corporation organized under the laws of Delaware with a principal place of business in Philadelphia, Pennsylvania.

22.     On information and belief, PeroxyChem was formed in or around March, 2014 when its predecessor in interest, FMC Environmental Solutions ("FMC"), decided to spin off its peroxygen division into a separate entity by transferring FMC Global Peroxygens in its entirety to One Equity Partners, the global private investment arm of J.P. Morgan Chase & Co.

23.     On information and belief, the new entity, PeroxyChem, acquired all assets and assumed all liabilities of its predecessor, FMC Global Peroxygens, and retained certain key employees including senior managers of FMC Global Peroxygens.

24.     PeroxyChem has brought an action against IET in this district for infringement of United States Patent No. 7,785,038 ("the '038 Patent").

25.     As its successor in interest, PeroxyChem steps into the shoes of FMC, has assumed the rights and obligations of FMC and is liable for FMC's acts and omissions relating to the subject matter of this litigation.  As such, the term 'PeroxyChem' as used throughout this Answer and Counterclaims refers to PeroxyChem, FMC, FMC Global Peroxygens or any of them, or their authorized agents, successors in interest or predecessors in interest.

## JURISDICTION AND VENUE

26.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §2201; the

Lanham Act, 15 U.S.C. §1125, et seq.; and the Sherman Act, 15 U.S.C. §1 et seq. and the Clayton Act/Robinson-Patman Act, 15 U.S.C. §12 et seq.

27.     This Court has jurisdiction over the subject matter of the causes of action stated herein pursuant to 15 U.S.C. §1125, 15 U.S.C. §§1, 12 and 13; and 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

28.     PeroxyChem is subject to personal jurisdiction in this judicial district. PeroxyChem has purposefully availed itself of the privilege of conducting business in this district through filing of a complaint alleging infringement of the '038 Patent.  PeroxyChem is further subject to personal jurisdiction in this district because it is a limited liability company registered to do business in Pennsylvania with a principal place of business in Philadelphia, Pennsylvania.

29.     Subject to IET's right to challenge that venue is convenient in this forum, IET asserts that venue is proper in this district under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

30.     IET was founded by Michael Scalzi ("Scalzi") in 1998 and has been continuously engaged in the business of in situ remediation of contaminated sites.  Since commencing operation in 1998, IET has proposed for treatment and treated more than 1,000 sites throughout the United States and Canada.

31.     Standard practice in the in situ remediation industry since the 1980s has been using so-called "Fenton's chemistry" to oxidize contaminants so that toxic contaminants are transformed into non-toxic, non-reactive compounds.

32.     In or around early 2003, IET began experimenting with ways to improve Fenton's chemistry by achieving double oxidation in various ways. One way was to use peroxide to transform Zero Valent Iron (ZVI) to Fe (III) and then adding persulfate to react with the Fe III (the "IET Method").

33.     IET has earned a reputation in the in situ remediation industry as an innovator. IET is the owner of U.S. Patents 7,129,388, 7,044,152, 7,531,709, 7,828,974 and 8,147,694, as well as pending U.S. Patent Applications 13/785,840, 13/866,158, 13/891,934, 14/268,637, 14/268,637, 14/268,629, 14/488,635 and 14/532,689.

34.     On information and belief, PeroxyChem's predecessor FMC owned and purportedly transferred to PeroxyChem various patents including the '038 Patent, the patent asserted against IET in the underlying Complaint.

35.     FMC has long been aware of IET and its practices, methods and innovations in connection with in situ remediation.

36.     FMC was one of IET's suppliers of persulfate and other chemicals used by IET in its business from at least as early as 2003 until 2014.

37.     On information and belief, from in or around 2003, FMC knew that IET also purchased persulfate from other suppliers.

38.     In July 2005, inventor Phillip Block, one of the purported inventors listed on the '038 Patent, and at that time an employee of FMC, met with Scalzi at IET's facility in Pipersville. At that meeting, Scalzi disclosed to Block various methods and improvements IET was using, including the IET Method.

39.     U.S. Provisional Patent Application 60/728,626, which eventually became the '038 Patent, was filed on October 20, 2005 naming inventors Philip Bock and Richard Brown.

40.     During prosecution of the application that became the '038 Patent (the "Application"), inventors Block and Brown, through their patent attorney (collectively "Applicants"), made various representations about the claimed invention, the prior art and certain "facts" known to those of ordinary skill in the art.

41.      On information and belief, as set forth in greater specificity in the Affirmative Defenses above, some of the representations made by the Applicants to obtain allowance of the Application were known by the Applicants to be misleading or false, and were made with the intent to mislead the Examiner, thereby obtaining allowance of the application.

42.     Inventors Block, Brown, FMC, their attorney, and PeroxyChem, or any combination of them, knew or should have known they were not entitled to a patent on the method disclosed on the Application.

43.     Applicants obtained the '038 Patent through inequitable conduct, as described with more specificity in the Affirmative Defenses above, but for which the patent application would not have been allowed.

44.     Applicants obtained the '038 Patent by fraud on the patent office, but for which the '038 Patent would not have been allowed.

45.     From 2004 until around 2013 FMC was the primary supplier of sodium persulfate and other peroxygens to the in situ remediation industry in the United States.

46.     In or around early 2014, it became known in the industry that FMC would no longer be supplying peroxygens to the in situ remediation industry.

47.     In or around January 2014, Michael Scalzi, president of IET and Wade Meese, Vice President of IET, formed Provectus Environmental Products, Inc. ("Provectus"),  a corporation organized under the laws of Pennsylvania, for the purpose of selling peroxygens and

other chemicals used by companies such as IET who perform in situ remediation. In May of 2014, IET exclusively licensed certain of its intellectual property to Provectus. On or about June 2014, James Mueller was hired by Provectus to act as its president. James Mueller, a former employee of FMC and PeroxyChem, has headed the marketing and sales of Provectus. James Mueller currently is employed by Provectus.

48. Scalzi, Meese and Mueller are shareholders in Provectus. In addition, Scalzi and Meese are officers of Provectus.

49. IET owns no shares in Provectus.

50. In exchange for permission to use certain intellectual property of IET, Provectus pays IET a reasonable royalty as is customary in the industry.

51. On information and belief, in or around March 2014, FMC sold its peroxygens business group to One Equity Partners forming a new entity, PeroxyChem. Provectus is a direct competitor of PeroxyChem in that Provectus sells chemicals for the same purpose and to the same market as PeroxyChem, namely, companies who perform in situ remediation.

52. In or around 2014, FMC and IET executed a joint research agreement ostensibly for the purposes of integrating IET's intellectual property into PeroxyChem's products.

53. On information and belief, and unbeknownst to IET, the true purpose of the joint research agreement between FMC and IET was for FMC and/or PeroxyChem, to obtain critical information not otherwise available to it about IET's intellectual property.

54. On information and belief, in or around May or June 2014, PeroxyChem began to make false and misleading statements about, among other things: IET's business dealings; the relationship between IET and Provectus; the scope of PeroxyChem's patents; and IET's right to practice its methods, in particular the IET Method.

55. One example of such false statements is PeroxyChem's assertion that IET was a subsidiary of Provectus and that therefore IET had an unfair advantage over IET's competitors in that IET would always get a lower price for Provectus' products than IET's competitors.

56. Another example of such false statements is PeroxyChem's assertion that IET's methods, including the IET Method, infringe PeroxyChem's intellectual property.

57. On information and belief, PeroxyChem made such false and misleading statements publicly in the form of advertising and promotional campaigns.

58. On information and belief, PeroxyChem made such false and misleading statements privately, in the form of direct communications with customers and prospective customers.

59. On information and belief, PeroxyChem made such false and misleading statements for the purpose of inducing prospective customers to do business with PeroxyChem instead of Provectus.

60. On information and belief, PeroxyChem made such false statements for the purpose of damaging IET's business reputation and attempting to dissuade customers and prospective customers from doing business with IET and Provectus.

61. On information and belief, PeroxyChem made such false and misleading statements in in order to harm IET and Scalzi in retaliation for Scalzi's support of Provectus, PeroxyChem's competitor.

62. On information and belief, PeroxyChem made such false and misleading statements in in order to harm IET and Scalzi in retaliation for Provectus' hiring of FMC's former executive James Mueller.

63.     On information and belief, PeroxyChem engaged in unfair pricing, pricing its peroxygen products considerably higher for Provectus and IET than for other purchasers.

64.     On information and belief, PeroxyChem engaged in unfair pricing for the purpose of restricting trade.

65.     In particular, on information and belief, PeroxyChem used discriminatory pricing in order to harm Provectus and IET, to reduce competition with PeroxyChem in the marketplace, and/or to give PeroxyChem an unfair advantage in the marketplace.

66.     Despite their knowledge that IET was using the IET Method since at least 2005, neither PeroxyChem nor its predecessor FMC objected to IET's use of the IET Method nor took any action against IET in connection with use of the IET Method in in situ remediation until in or around June 2014, after Provectus was formed and Mueller was hired.

67.     Only after it became aware of Provectus and Scalzi's, Meese's and Mueller's involvement in Provectus did PeroxyChem threaten action against IET and IET's customers in connection with the IET Method and PeroxyChem's claimed patent rights.

68.     In or around September 2014, IET submitted a proposal to its customer Haley & Aldrich to remediate a polluted site in Lodi, New Jersey (the "Hexcel job").  The proposal described the methods and processes to be used by IET to remediate the site, which methods included use of the IET Method.

69.     In or around October 2014, PeroxyChem contacted Haley & Aldrich and made certain false and misleading statements likely to cause Haley & Aldrich to cancel IET's contract for the Hexcel job, delay the commencement of the Hexcel job, cast doubt upon IET's right to perform its methods and otherwise interfere with IET's contractual or prospective business relationship with Haley & Aldrich.

70.     One example of such false and misleading statements was that the IET Method violated PeroxyChem's intellectual property and that if Haley & Aldrich permitted IET to perform the Hexcel job, Haley & Aldrich would be subject to liability for patent infringement, among other things.

71.     PeroxyChem's assertion of its alleged intellectual property rights after almost 10 years with no enforcement against IET, was in bad faith and motivated by a desire to unlawfully restrict trade; to retaliate against Scalzi, Meese, IET and Provectus; and through them to retaliate against ex-employee James Mueller;

72.     In or around October 2014, PeroxyChem sent IET a cease and desist letter and a proposed  License Agreement asserting that if it proceeded with the proposed work for the Hexcel job, IET would be in violation of PeroxyChem's intellectual property, including the '038 Patent.

73.     The letter demanded that IET execute the proposed License Agreement and pay a royalty of $120,000 in order to avoid litigation. A true and correct copy of the License Agreement is attached as Exhibit A.

74.     IET in good faith declined to execute the proposed License Agreement.

75.     Despite PeroxyChem's threats, Haley & Aldrich proceeded with the IET contract for the Hexcel job.  IET commenced work at the site in October 2014 and finished in December 2014.

## COUNTERCLAIM I

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,785,038)

76.     IET realleges and incorporates by reference the allegations of paragraphs 1-75.

77.     IET has not infringed and does not infringe, directly, contributorily or by

inducement, any claim of the '038 Patent, either literally or under the doctrine of equivalents. Accordingly, IET is entitled to declaratory judgment of non-infringement of the '038 Patent.

## COUNTERCLAIM II

### (Declaratory Judgment Of Invalidity)

78.     IET realleges and incorporates by reference the allegations of paragraphs 1-77.

79.     Upon information and belief, the '038 Patent is invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112.  Accordingly IET is entitled to declaratory judgment that the claims of the '038 Patent are invalid.

## COUNTERCLAIM III

### (Declaratory Judgment of Unenforceability)

80.     IET realleges and incorporates by reference the allegations of paragraphs 1-79.

81.     Upon information and belief, the '038 Patent is unenforceable because of inequitable conduct before the United States Patent and Trademark Office, as set forth with specificity in paragraph 14 in the Answer above.  Accordingly, IET is entitled to a declaratory judgment that the '038 Patent is unenforceable.

## COUNTERCLAIM IV

### (Federal and State False Advertising - 15 U.S.C. §1125, 73 Pa §201)

82.     IET restates and incorporates by reference its allegations in paragraphs 1 through 81 of its Counterclaims.

83.     PeroxyChem made false or misleading statements of fact about, among other things:  IET, IET's connection to Provectus, IET's business practices, IET's right to practice its methods, and PeroxyChem's patent rights and the scope of its patents.

84.     PeroxyChem made such false and misleading statements in at least one commercial advertisements or promotion.

85.     PeroxyChem's misleading statements were material in that they were likely to deceive, and in fact did deceive, prospective and actual customers of IET.

86.     PeroxyChem's false and misleading statements were used in interstate commerce.

87.     PeroxyChem's false and misleading statements are likely to cause, and in fact have caused, IET competitive or commercial injury.

## COUNTERCLAIM V

### (Tortious Interference with Contract, Business Relationship)

88.     IET restates and incorporates by reference its allegations in paragraphs 1 through 87 of its Counterclaims.

89.     At the time PeroxyChem contacted Haley & Aldrich concerning the Hexcel job in Lodi, NJ, IET had a contractual or prospective contractual with Haley & Aldrich in that Haley & Aldrich had accepted IET's proposal to remediate the Hexcel site and IET had begun work at the Hexcel site.

90.     At the time PeroxyChem contacted Haley & Aldrich concerning the Hexcel job in Lodi, NJ, PeroxyChem knew IET had a contractual or prospective contractual with Haley & Aldrich.

91.     PeroxyChem's communications with Haley & Aldrich were purposeful and were specifically intended to harm Haley & Aldrich's existing contractual relation with IET, to prevent a contract formation, to prevent a prospective relation from occurring, to procure a contractual breach, to harm IET''s commercial reputation or to terminate a business relationship.

92.     PeroxyChem's communications with Haley & Aldrich were not privileged or justified.

93.     As a result of PeroxyChem's communications with Haley & Aldrich, IET was damaged.

## COUNTERCLAIM VI

### (Tortious Interference with Economic Advantage)

94.     IET restates and incorporates by reference its allegations in paragraphs 1 through 93 of its Counterclaims.

95.     At all times herein stated, IET had and has a reasonable expectation of economic advantage by virtue of its long history in the in situ remediation, its long standing status as a trusted vendor to Haley and Aldrich, its reputation in the industry and the goodwill it has earned accordingly.

96.     At all times herein stated, PeroxyChem knew of IET's expectancy of economic advantage.

97.     PeroxyChem wrongfully and intentionally interfered with that expectancy by, among other things, making misleading and false statements publicly and privately to IET's customers and prospective customers.

98.      As a result of PeroxyChem's interference, IET has been damaged in an amount to be shown at trial.

## COUNTERCLAIM VII

### (Commercial Disparagement in Pennsylvania)

99.     IET restates and incorporates by reference its allegations in paragraphs 1 through 98 of its Counterclaims.

100.     PeroxyChem made and published certain false statements intending to cause pecuniary loss to IET and Scalzi, among others.

101.     At the time PeroxyChem made and published each false statement, PeroxyChem knew it was false or acted in reckless disregard of its truth or falsity.

102.     As a result of PeroxyChem's false statements, IET experienced pecuniary loss.

103.     At the time it made and published said false statements, PeroxyChem knew or should have known publication would cause pecuniary loss.

## COUNTERCLAIM VIII

### (State Antitrust – Illegal Restriction on Free Trade under 73 P.S. §201.1 et seq.)

104.     IET restates and incorporates by reference its allegations in paragraphs 1 through 103 of its Counterclaims.

105.     PeroxyChem's course of conduct, including its assertion of the '038 Patent against IET in mid-2014 after a decade of acquiescence, and only after Scalzi's perceived connection with PeroxyChem's new competitor, Provectus, is an attempt to illegally restrict free trade in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201.1 et seq.

106.     As a result of PeroxyChem's actions, IET has suffered injury to its business of the type the Unfair Trade Practices Act was designed to prevent, in an amount to be proved at trial.

## COUNTERCLAIM IX

### (Federal Antitrust - Illegal Restriction on Free Trade under 15 USC §1 et seq.)

107.    IET restates and incorporates by reference its allegations in paragraphs 1 through 106 of its Counterclaims.

108.    PeroxyChem's course of conduct, including its assertion of the '038 Patent against IET in mid-2014 after a decade of acquiescence, and for an improper purpose, is an attempt to illegally restrict free trade in violation of the Sherman Act, 15 U.S.C. §1 et seq., and the Clayton Act/Robinson-Patman Act, 15 U.S.C.§12 et seq.

109.    As a result of PeroxyChem's actions, IET has suffered injury to its business of the type the Sherman Act was designed to prevent.

WHEREFORE, IET seeks damages and remedies against PeroxyChem as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, having fully responded to PeroxyChem's Complaint and asserted its Counterclaims against PeroxyChem, Innovative Environmental Technologies, LLC prays for judgment as follows:

a.    A judgment dismissing PeroxyChem's Complaint against IET with prejudice;

b.    A judgment in favor of IET on all of its Affirmative Defenses and Counterclaims;

c.    Compensatory and statutory damages in an amount to be proven at trial;

d.    A declaration that IET has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid and enforceable claims of the '038 Patent;

e. A declaration that the '038 Patent is invalid;

f. A declaration that the '038 Patent is unenforceable;

g. A declaration that PeroxyChem's claim is barred by the doctrines of laches, equitable estoppel, and/or waiver;

h. A declaration that this case is exceptional and an award to IET of its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

i. A preliminary and permanent injunction enjoining further unlawful activity by PeroxyChem and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them; and

j. A judgment awarding IET such other and further relief as the Court deems just and appropriate.


## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), IET demands a jury trial on all issues so triable.

Respectfully submitted,


IP Works, PLLC

/s/ Janelle C. Snyder
Janelle C. Snyder, Esquire
Catherine A. Cavella, Esquire
99 Lantern Drive, Suite 201A
P.O. Box 818
Doylestown, PA 18901
(215) 348-1442

Attorneys for Defendant,
Innovative Environmental Technologies, LLC

Dated: December 29, 2014

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of Answer, Affirmative

Defenses, and Counterclaims was served by e-filing, this 29th day of December, 2014 upon the

following counsel.

        Jeffrey S. Pollack
        Samuel W. Apicelli
        Jessica Priselac
        30 South 17th Street
        Philadelphia, PA 19103

        /s/ _____
        IP Works, PLLC
        Attorneys for Defendant/Counterclaimant Innovative
        Environmental Technologies, Inc.